# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3682

_____

| | | |
|---|---|---|
| In re:  Dial Business Forms, Inc., | * | |
| | * | |
| Debtor. | * | |
| ------------------------------------------------- | * | |
| General Electric Capital Corporation, | * | |
| | * | Appeal from the United States |
| Appellee, | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| v. | * | |
| | * | |
| Dial Business Forms, Inc.; Paul D. | * | |
| Sinclair, as Trustee on behalf of | * | |
| Class 3 Unsecured Creditors, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  April 17, 2003

Filed:  September 3, 2003

_____

Before LOKEN, Chief Judge, HANSEN and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

The confirmed Chapter 11 reorganization plan of debtor Dial Business Forms, Inc. (the "Plan"), granted General Electric Capital Corporation ("GECC") an Allowed Secured Claim of $1,000,000 and preserved GECC's perfected pre-bankruptcy security interests in much of Dial's equipment.  The Plan granted Dial's Class 3

unsecured creditors an Allowed Unsecured Claim of $950,000 plus a subordinated security interest in all of Dial's assets. Thereafter, GECC allowed its filed financing statements to lapse. When Dial failed to satisfy its payment obligations under the Plan, the Class 3 creditors, represented by their Trustee, advised GECC that their security interest now had priority under the Missouri Uniform Commercial Code. GECC moved to reopen the Chapter 11 case, urging that the Plan be construed as granting GECC a continuing prior security interest. No party challenged the jurisdiction of the bankruptcy court to reopen the case for this purpose, and we agree it had jurisdiction to do so. See 11 U.S.C. § 350; In re Case, 937 F.2d 1014, 1018 (5th Cir. 1991). The bankruptcy court held that GECC retained its priority despite allowing its financing statements to lapse. In re Dial Bus. Forms, Inc., 273 B.R. 594 (Bankr. W.D. Mo. 2002). The Eighth Circuit Bankruptcy Appellate Panel (the "BAP") affirmed, applying a somewhat different analysis. In re Dial Bus. Forms, Inc., 283 B.R. 537 (B.A.P. 8th Cir. 2002). The Class 3 creditors appeal. We affirm.

## I. Background

GECC made secured loans to Dial in the summer of 1995 and perfected its security interests in Dial equipment by filing UCC-1 Financing Statements in the appropriate jurisdictions. Dial petitioned for Chapter 11 relief in late 1997. GECC filed a proof of claim in the amount of $1,130,370.30. Dial filed a proposed plan of reorganization in June 1998.[1] The proposed plan granted GECC an Allowed Secured Claim of $1,000,000, granted Allowed Secured Claims to three other creditors with perfected security interests, and provided that these creditors "shall retain their

---

[1]The proposed plan and other documents from the record in the Chapter 11 bankruptcy case are contained in GECC's separate appendix. The Class 3 creditors move to strike the appendix because those documents were not placed in the record of this adversary proceeding before the bankruptcy court and the BAP. See FED. R. BANKR. P. 8006. We deny this motion for the reasons explained in In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203-06 (3d Cir. 1995).

security interests and liens in the property of [Dial]." The plan provided that the Class 3 unsecured creditors "will receive their pro-rata share of 80% of Dial's Net Profit." In October, Dial filed a First Amended Plan providing that distributions to the Class 3 creditors "shall be secured by a subordinated interest in all of Dial's assets." GECC objected to the First Amended Plan on an unrelated ground, and Dial filed a Second Amended Plan in late November addressing that objection.

The Second Amended Plan was confirmed without objection on January 13, 1999. After confirmation, Dial executed a $950,000 Promissory Note, a Security Agreement, and a UCC-1 Financing Statement in favor of the Class 3 creditors. The Trustee filed the financing statement, thereby perfecting their subordinated security interest in Dial's assets. In the summer of 2000, GECC failed to file continuation financing statements for its security interests in Dial's equipment. Under the Missouri UCC, a filed financing statement is effective for five years and then lapses unless a continuation statement has been filed. Upon lapse, the security interest "is deemed to have been unperfected as against a person" holding an existing security interest. MO. REV. STAT. § 400.9-403(2) (1994).[2]

In February 2001, Dial failed to make an installment payment due to the Class 3 creditors, and in June Dial defaulted on its payment obligations to GECC. When the Trustee gave notice he would sell Dial's assets to satisfy the Class 3 creditors' security interest, GECC filed new UCC-1 Financing Statements and commenced this adversary proceeding. The dispute was submitted to the bankruptcy court on the parties' Stipulation of Material Facts. The Class 3 creditors offered, but the court refused to consider, an affidavit from the Co-Chairman of the Class 3 Unsecured Creditors Committee regarding their intent in approving the Plan.

---

[2]On July 1, 2001, Missouri enacted substantial revisions to its Uniform Commercial Code. Former § 400.9-403(2) is now codified at § 400.9-515. As this case is governed by the former statute, like the bankruptcy court and the BAP we will cite the section numbers in effect before July 1, 2001.

The bankruptcy court agreed with the Trustee that, if former § 400.9-403(2) controlled the issue, the Class 3 creditors "would hold a lien superior to the lien of GECC." But the court nonetheless concluded that GECC's security interest was entitled to priority. Article 9 of the Missouri UCC permits "subordination by agreement," the court reasoned, and the Class 3 creditors agreed to subordinate their security interest in Section 3.3(E) of the Plan, which provides that the Class 3 creditors' allowed claims "shall be secured by a subordinated interest in all of Dial's assets." 273 B.R. at 597-98. On appeal, a divided panel of the BAP affirmed, concluding that "the subordination language contained in paragraph 3.3(E) of the Debtor's confirmed Plan controls over any Missouri state law that provides to the contrary." 283 B.R. at 542.

## II. Discussion

On appeal, the parties agree that the Class 3 creditors prevail if § 400.9-403(2) provides the governing legal principle. Under that statute, when a secured creditor with priority allows its financing statement to lapse, existing creditors with subordinated security interests "advance[] in priority." In re Hilyard Drilling Co., 840 F.2d 596, 601 (8th Cir. 1988). GECC argues that the confirmed Plan, not the lapse rule in § 400.9-403(2), governs the parties' relationship, and the Class 3 creditors "unconditionally subordinated" their security interest in Section 3.3(E) of the Plan. The Class 3 creditors agree, albeit reluctantly, that the rule in § 400.9-403(2) may be "trumped" by an express agreement to subordinate in a confirmed Chapter 11 plan.[3]

_____

[3]This concession eliminates the significance of a potentially important legal issue on which the bankruptcy court and the BAP disagreed. The bankruptcy court concluded that, *under state law,* the agreement to subordinate in Section 3.3(E) of the Plan controls, rather than the lapse rule in § 400.9-403(2), because the Missouri UCC expressly provides that, "Nothing in this article prevents subordination by agreement by any person entitled to priority." MO. REV. STAT. § 400.9-316 (1994), now § 400.9-339 (Supp. 2003). The BAP disagreed, concluding this provision does not

But they argue the bankruptcy court and the BAP erred in construing Section 3.3(E) of the Plan as reflecting such an agreement. Thus, the appeal turns on the proper interpretation of the Plan. Once confirmed, a Chapter 11 plan "acts like a contract that binds the parties that participate in the plan." In re Commercial Millwright Serv. Corp., 245 B.R. 603, 606 (N.D. Iowa 2000) (quotation omitted).

The Class 3 creditors argue that the bankruptcy court and the BAP erred in construing Section 3.3(E) of the Plan as an agreement to subordinate their new security interest in Dial's assets. Section 3.3(E) recited that the Class 3 creditors were receiving "a subordinated interest." That recital, the Class 3 creditors argue, merely recognized the obvious -- that GECC's pre-bankruptcy security interests had priority -- like the "subject to " provision in In re Chattanooga Choo-Choo Co., 98 B.R. 792, 800 (Bankr. E.D. Tenn. 1989). Thus, Section 3.3(E) was not the kind of express agreement to subordinate that overrides the lapse rule in § 400.9-403(2).

---

apply because the Class 3 creditors were not persons "entitled to priority." The BAP nonetheless concluded that Section 3.3(E) of the Plan controls under principles of federal preemption. We agree with the bankruptcy court that any agreement to subordinate in the Plan is within the purview of § 400.9-316, and therefore trumps the lapse rule in § 400.9-403(2) as a matter of state law. When GECC filed a claim and participated in the Chapter 11 proceeding, it put its perfected security interests "in play," subject to being extinguished or given reduced priority in the confirmed plan. See In re Be-Mac Transp. Co., 83 F.3d 1020, 1025-26 (8th Cir. 1996). Likewise, at least in theory, the Class 3 unsecured creditors could have been allowed a security interest with enhanced priority in the confirmed plan. The effect of plan confirmation is to replace the prior obligations of the Chapter 11 debtor with the obligations provided in the plan. In re Consumers Realty & Dev. Co., 238 B.R. 418, 425 (B.A.P. 8th Cir. 1999). In these circumstances, all participating creditors, though not "entitled to priority," have an arguable claim to priority. Thus, we think a provision in the plan defining the priority of security interests conferred by the plan should fall within the purview of § 400.9-316. But if not, the agreement to subordinate in the plan is surely enforceable under the general pronouncement in the Missouri UCC that its provisions "may be varied by agreement." MO. REV. STAT. § 400.1-102(3). See Wilson v. Lodwick, 96 S.W.2d 879, 883 & n.2 (Mo. App. 2002).

We reject this interpretation of Section 3.3(E). The "subject to" provision in Chattanooga Choo-Choo was a background statement in a junior lender's security agreement, not a provision in a Chapter 11 plan of reorganization. The junior lender in Chattanooga Choo-Choo had no choice but to receive a security interest "subject to" the senior lender's prior perfected interest. As noted in footnote 3, that is not necessarily true of the creditors participating in a Chapter 11 reorganization. It is true that lenders with security interests perfected prior to the Chapter 11 proceeding have great leverage to protect their interests in the Chapter 11 plan. But the priority of their position is not a foregone conclusion. Indeed, as 11 U.S.C. §§ 1141(a) and (b) make clear, it is not inevitable that a preexisting security interest will survive confirmation of a Chapter 11 plan. As Judge Posner observed in In re Penrod, 50 F.3d 459, 462 (7th Cir. 1995):

> A plan of reorganization can expressly preserve preexisting liens . . . . Conversely, it can expressly abrogate some or all of those liens with the full consent of the lienholders; and this is common. . . . [L]ike most generalizations about law, the principle that liens pass through bankruptcy unaffected cannot be taken literally.

When the Plan preserved GECC's preexisting security interests and granted the Class 3 creditors a "subordinated interest," it defined the relative post-bankruptcy priorities between the security interests preserved and granted by the Plan. The Class 3 creditors argue that they did not expressly agree to subordinate their security interest in Section 3.3(E). As a matter of fact, this contention is wrong, because they voted to approve the Plan. As a matter of law, a particular creditor's intent is irrelevant, because a Chapter 11 plan may be confirmed over the objections of one or more creditors, who are then every bit as bound as if they had voted to approve the plan.[4] Thus, we agree with the bankruptcy court that, "as between themselves, GECC

---

[4]For this reason alone, the bankruptcy court did not abuse its discretion by excluding the affidavit of the Co-Chairman of the Class 3 Unsecured Creditors

and the Class 3 Unsecured Creditors agreed that the Class 3 Unsecured Creditors' security interest is subordinate to the interest of GECC."  273 B.R. at 598.

There remains the question whether the relative priorities established when Section 3.3(E) granted the Class 3 creditors a "subordinated" security interest fixed that interest's priority for the life of the competing liens, or whether GECC's greater priority was subject to future defeasance if GECC failed to file continuation financing statements as required by the Missouri UCC.  The Plan is silent on this issue.  To our knowledge, no prior case has addressed this issue, either in the context of a Chapter 11 plan, or in the analogous non-bankruptcy context of competing creditors entering into an agreement to subordinate under UCC § 9-316 and the creditor granted priority later allowing its financing statement to lapse.  Indeed, the subordination and inter-creditor agreements suggested in the Forms and Materials volume of a leading UCC treatise do not address the issue.  See 5 UNIFORM LAWS ANNOTATED -- UNIFORM COMMERCIAL CODE -- FORMS AND MATERIALS §§ 9.3.2 Form 2, 9.3.5 Form 1 (2001).

In resolving this question, our proper standard of review is critical.  A confirmed Chapter 11 plan not only "acts like a contract that binds the parties," Commercial Millwright, 245 B.R. at 606.  It is also an order of the bankruptcy court. For this reason, a number of circuits have held that "[i]n reviewing a bankruptcy court's interpretation of a confirmed plan, then, the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order." In re Weber, 25 F.3d 413, 416 (7th Cir. 1994); accord In re O'Connor, 258 F.3d 392, 401 (5th Cir. 2001);  In re Terex Corp., 984 F.2d 170, 172 (6th Cir. 1993); Comm'n of Dep't of Pub. Utils. v. New York, New Haven & Hartford R.R. Co., 178 F.2d 559, 563-64 (2d Cir. 1949), cert. denied, 339 U.S. 942 (1950).  In other contexts, we defer to a lower court's interpretation of its own order. See, e.g., Steahr v. Apfel, 151 F.3d 1124, 1126 (8th Cir. 1998).  We agree with our

_____

Committee regarding the Class 3 creditors' intent as reflected in the Plan.

sister circuits that a bankruptcy court's interpretation of a confirmed plan should be reviewed under the abuse of discretion standard.

In this case, the bankruptcy court construed Section 3.3(E) of the Plan as permanently fixing the relative priorities of the security interest granted the Class 3 creditors and the pre-bankruptcy security interests preserved by the Plan. The BAP agreed. This was clearly a plausible interpretation of the confirmed Plan. Before a clarifying amendment to § 9-403(2), courts had split over whether a lapsed financing statement rendered a security interest unperfected as against other security interests perfected before the lapse, or only as against subsequent secured creditors. See Chattanooga Choo-Choo, 98 B.R. at 798-99. More recently, the Third Circuit held that a secured creditor granted priority in a Chapter 11 plan need not file a continuation financing statement to maintain priority against the bankruptcy trustee, noting that such a filing requirement "would serve no useful purpose." Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184, 192 (3d Cir. 1988). Similarly, as between creditors who agreed to their relative priorities in the Plan (as opposed to post-bankruptcy creditors), no useful purpose would be served by the filing of a continuation financing statement. Therefore, the bankruptcy court did not abuse its discretion in construing the Plan, though silent on this question, as preserving GECC's priority as to the Class 3 creditors despite the lapsed financing statements.

The judgment of the bankruptcy appellate panel is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.