# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 16-6031

_____

In re: Stephen D. McCormick, also known as Steve D. McCormick; Karen A. McCormick

*Debtor*s

------------------------------

Stephen D. McCormick; Karen A. McCormick

*Debtors - Appellants*

v.

Starion Financial

*Movant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of North Dakota - Fargo

_____

Submitted: April 26, 2017
Filed: May 18, 2017

_____

Before SALADINO, Chief Judge, FEDERMAN and SHODEEN, Bankruptcy
Judges.

_____

SALADINO, Chief Judge.

On March 10, 2014, the bankruptcy court[1] denied Starion Financial's ("Starion") motion to compel payment of Starion's attorneys' fees and expenses in accordance with the confirmed Chapter 11 plan of reorganization and granted the Debtors' motion to disallow Starion's attorneys' fees and costs. Starion appealed to this panel, and we reversed the decision of the bankruptcy court and remanded the case for consideration of the issues as to timeliness and reasonableness of the requested fees and costs.[2]

The Debtors Stephen D. and Karen A. McCormick now appeal from the bankruptcy court's order granting in part and denying in part Starion's motion to compel payment of fees under the confirmed plan of reorganization, and granting in part and denying in part the Debtors' motion to disallow attorneys' fees and costs claimed by Starion. We have jurisdiction of this appeal from entry of the bankruptcy court's final order pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## *BACKGROUND*

Prior to bankruptcy filing, the Debtors were engaged in a variety of businesses, including construction, real estate investment, and development. The Debtors operated their businesses individually and through a number of limited liability companies that they owned and controlled, including Misty Waters, LLC; Steve and Karen McCormick, LLC; and Construction Financial Services, LLC.

---

[1]The Honorable Shon K. Hastings, Chief Judge, United States Bankruptcy Court for the District of North Dakota.

[2]*Starion Fin. v. McCormick (In re McCormick)*, 523 B.R. 151 (B.A.P. 8th Cir. 2014). Starion appealed that decision to the Eighth Circuit Court of Appeals, which dismissed the appeal as interlocutory as the issues on remand had not yet been decided by the bankruptcy court.

Over the course of several years the Debtors, their companies, and Starion entered into a series of loan transactions that included execution by the Debtors and their companies of a number of loan documents, including promissory notes secured by mortgages encumbering various parcels of real estate. The Debtors also executed personal guarantees of the obligations owed to Starion by the entities owned by the Debtors.

Defaults under the loans resulted in a workout agreement dated July 26, 2012, among Starion, the Debtors, and their companies. As part of that agreement, Starion agreed to forbear from exercising its default remedies under certain conditions. The Debtors and their companies reaffirmed their obligations to Starion under the loan documents and the Debtors and Misty Waters, LLC executed a new mortgage encumbering a development called Misty Waters for up to $7 million.[3] The Debtors also executed and delivered confessions of judgment, apparently to secure their guaranty obligations. The workout agreement provided that the confessions of judgment could be immediately filed with the clerk of the court and transcribed to such other jurisdictions as Starion desired. The judgments were entered on July 27, 2012, in Burleigh County, North Dakota, and Starion promptly transcribed them to other counties in North Dakota, thereby creating judgment liens in counties where the Debtors owned real estate.

The Debtors filed a voluntary Chapter 11 petition on August 29, 2012, and on August 9, 2013, filed a second amended plan of reorganization. Starion filed its objection to confirmation raising a number of objections, including: "Starion, as an oversecured creditor is entitled to its attorney's [f]ees. The Plan does not provide for payment [of] Starion Financial's attorney's fees claim."

---

[3]Starion already had mortgages on this property and it appears this new mortgage was to cross-collateralize all of the debt owed to Starion with the Misty Waters property.

Starion, the Debtors, and their companies settled Starion's plan objection with an addendum to the Debtors' second amended plan dated September 10, 2013 ("Starion Addendum").[4] The Starion Addendum identified all of the obligations owed to Starion by the Debtors and their companies, and agreed that the total indebtedness owed to Starion as of July 1, 2013, included principal of $6,272,116.56, interest of $314,242.86, and interest accrual at a daily rate of $1,019.23. The parties agreed upon the plan treatment and repayment terms for that indebtedness. Among other provisions, the Starion Addendum stated:

> Collection Costs. Debtors agree to pay Starion's allowable attorney's fees and costs associated with both Debtors' bankruptcy proceedings including but not limited to reasonable attorneys' fees, consulting, appraisal, filing fees, late fees, etc. (collectively referred to as "Fees") through the Plan. The procedure for allowance of such attorneys' fees and costs will be as provided in the Plan.

On September 13, 2013, the Debtors' plan, incorporating the Starion Addendum, was confirmed by the bankruptcy court. Section 8.01(c) of the confirmed plan defines "Allowable Attorneys' Fees and Costs" as "a claim against the debtors for an oversecured creditor's attorney's fees and costs incurred in connection with the creditor's secured claim." That section goes on to describe the procedure for allowance of the fees and costs as follows:

> Any Allowable Fees and Costs must be approved by Debtors before payment is disbursed. At least ten days prior to the Effective Date of the Plan, the creditor and/or its counsel, shall submit an itemized statement (reflecting date, a description of the services, increments of time spent, and hourly rate being charged), to the Debtors and

---

[4]The Debtors also filed a Chapter 11 case for one of their companies, Misty Waters, LLC. The Addendum was intended to resolve plan treatment in both cases.

their counsel, for approval. If the parties cannot come to an agreement or resolution as to the amount of the Allowable Attorneys' Fees and Costs to be paid, the matter shall be determined by the Bankruptcy Court, upon notice and hearing. No payment of Allowable Attorneys' Fees and Costs will be due until either the agreement of the parties or a final determination by the Bankruptcy Court that those amounts are due under the Plan.

On October 3, 2013, Starion submitted an itemized statement to the Debtors for various costs including interest, late fees, real estate taxes, and appraisal and engineering fees. A few days later on October 7, 2013, Starion submitted an updated statement that included its attorneys' fees. Taking the position that Starion was not entitled to these amounts based upon the plan or 11 U.S.C. § 506(b), the Debtors refused to pay the amounts requested for appraisal and engineering costs, and the attorneys' fees and expenses.

Starion filed a motion requesting the bankruptcy court to compel payment of its fees in the amount of $125,014.64 based upon the plan and 11 U.S.C. § 506(b). On the same day, the Debtors filed a motion seeking disallowance of the fee request contending that there is no agreement for the payment of fees; the fee request was untimely; and the fees were not reasonable.

## BANKRUPTCY COURT'S FIRST DECISION

On March 10, 2014, the bankruptcy court issued its order denying Starion's motion to compel payment of attorneys' fees and costs, and granting the Debtors' motion seeking disallowance of Starion's request. The court began its analysis by noting the terms of the Starion Addendum and the plan, and determined that "both Debtors and Starion agree that the Court's analysis regarding Starion's eligibility to

recover attorney fees is confined to limits outlined in section 506 of the Bankruptcy Code."

Since § 506 allows an oversecured creditor to recover reasonable fees and costs provided for under the agreement under which the claim arose, the bankruptcy court first looked at whether Starion's claim was oversecured. The court noted that "Debtors do not dispute Starion's claim that it is oversecured. In fact, in their briefs, Debtors refer to Starion's claim as oversecured."[5] Apparently, Starion would not have been oversecured based solely on its mortgage liens, but became oversecured when the confessions of judgment were entered and transcribed to other counties – thereby creating liens on additional real estate owned by the Debtors.

Next, the bankruptcy court looked at whether fees and costs were allowed under an agreement under which the claim arose as required by § 506 of the Bankruptcy Code. It held that "Starion's judicial liens 'arose' under the Judgments, which when entered by the clerk and recorded under North Dakota law created liens on real property. N.D.C.C. § 28-20-13. Consequently, the documents this Court looks to for an agreement giving rise to the claim for attorney fees and costs are the Judgments." Relying upon a North Dakota statute that disfavors payment of attorney fees, the bankruptcy court concluded that the absence of "a clause or sentence [in the judgment] entitling Starion to collect attorney fees" was fatal to Starion's request for payment. As a result of that decision, the bankruptcy court did not reach the additional issues raised by the Debtors regarding the timeliness of the fees request and the reasonableness of the fees. Accordingly, Starion's motion to compel payment was denied and the Debtors' motion disallowing the fees was granted. Starion appealed the bankruptcy court's ruling.

---

[5]Based upon footnote 9 in the bankruptcy court's order, this element is deemed to have been conceded by the parties.

## FIRST B.A.P. DECISION

On appeal, the Debtors again conceded that Starion is an oversecured creditor, but argued that it is oversecured only because of the judgment liens it obtained by virtue of the confessions of judgment on other property of the Debtors in various counties in North Dakota. Because the judgments do not state anything about attorneys' fees, the Debtors asserted that Starion had no right to fees since it was oversecured only by virtue of the judgments.

In our opinion of December 24, 2014, we agreed with Starion that in addition to the confessions of judgment, its claim also "arose" under the various promissory notes, mortgages, loan agreements, workout agreement and other loan-related documents. All of those documents were still in effect and it is undisputed that they contained provisions for collection of attorneys' fees and expenses. We rejected the Debtors' argument that we should look only to the judgments as the agreements under which the claim arose. We reversed the decision of the bankruptcy court and remanded for further proceedings as to the remaining issues – whether the request for fees was timely and whether the fees were reasonable.

## SECOND BANKRUPTCY COURT DECISION

On September 20, 2016, the bankruptcy court issued its order granting in part and denying in part Starion's motion to compel and granting in part and denying in part the Debtors' motion to disallow attorneys' fees. With regard to timeliness, the court noted that Starion acknowledged its attorneys' fee submission was three days late under the procedure set forth in the confirmed plan. The court looked to state contract law to determine whether the late submission was fatal to Starion's right to collect fees. The court found that the untimely submission was not a material breach and would not bar Starion from collecting its fees.

The bankruptcy court then engaged in a review of the reasonableness of the fees incurred by Starion. After an analysis of the time entries and expert testimony, the bankruptcy court awarded Starion attorneys' fees and expenses in the reduced amount of $83,122.95, and disallowed fees in the amount $27,754.00. The Debtors filed this appeal.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *First Nat'l Bank v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997) (quoting *Miller v. Farmers Home Admin. (In re Miller)*, 16 F.3d 240, 242-43 (8th Cir. 1994)). In this case we review de novo the bankruptcy court's interpretation and application of 11 U.S.C. § 506(b). *Wegner v. Grunewaldt*, 821 F.3d 1317, 1320 (8th Cir. 1987); *White v. Coors Distributing, Co. (In re White)*, 260 B.R. 870, 874 (B.A.P. 8th Cir. 2001). Factual determinations concerning an award of attorney's fees are reviewed under a clearly erroneous standard, while the court's determination of the amount of the fee award is reviewed for abuse of discretion. *Litton Microwave Cooking Prod. v. Leviton Mfg. Co.*, 15 F.3d 790, 795 (8th Cir. 1994). The bankruptcy court's finding as to the material terms of the plan was one of fact and thus subject to the clearly erroneous standard of review. *Ford v. First Mun. Leasing Corp.*, 838 F.2d 994, 997 (8th Cir. 1988).

## DISCUSSION

The Debtors raise three issues on appeal. First, the Debtors argue that the bankruptcy court's first order dated March 10, 2014, was correct and should not have been reversed by this panel. Second, the Debtors argue that in its second order dated September 20, 2016, the bankruptcy court erred in determining that Starion's untimely submission of a request for fees was not a material breach of the plan.

Finally, the Debtors argue that all of Starion's fees should be disallowed due to egregious billing practices by its attorneys.

*Law of the Case.*

With its first issue on appeal, the Debtors are trying to revisit the issues we decided when this case first appeared before this panel. For its part, Starion argues that this panel's first decision is "law of the case" and should not be revisited at this time. We agree.

> Under the law-of-the-case doctrine, "'a court should not reopen issues decided in earlier stages of the same litigation.'" *In re Raynor*, 617 F.3d 1065, 1068 (8th Cir.2010) (quoting *Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)). This policy of deference "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Id.* (internal quotation marks omitted). . . . "[T]he doctrine does not apply if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1250–51, 179 L. Ed. 2d 196 (2011) (second alteration in original) (internal quotation marks omitted).

*Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 898 (8th Cir.), *cert. denied*, 136 S. Ct. 507 (2015).

We are not convinced that our prior decision was clearly erroneous or that it would work a manifest injustice in this appeal. The Debtors' argument is, again, based on the theory that "Starion's claim of oversecured status was only possible by

virtue of the two judgment liens which arose by operation of law" and were not "consensual," and that the judgments did not contain appropriate language providing for the recovery of attorneys' fees.[6] For several reasons, we believe the Debtors' arguments, while creative, obscure the real issue.

The Debtors' position ignores the discussion in our prior opinion where we noted that the judgment liens were only one piece of Starion's secured claim. Starion's secured claim was made up of not only the indebtedness owed under the judgments, but also indebtedness owed on still-outstanding promissory notes secured by mortgages encumbering various other parcels of real estate. It is undisputed that the notes, mortgages, workout agreement, and other loan documents comprising the secured claim of Starion contained the appropriate language regarding recovery of attorneys' fees and costs under § 506(b). Debtors seem to be saying that when a secured claim is made up of multiple documents and agreements, *every* single document and agreement constituting a part of that claim must contain appropriate attorney fee language. Debtors have failed to cite to any support for that position. Here, as discussed in our earlier opinion, Starion's secured claim arose under a number of different agreements, many of which contain attorney fee provisions.

The Debtors further argue that the other loan documents were somehow merged into the confessions of judgment by operation of law. Again, Debtors are simply incorrect. The judgments were *not* entered as part of a suit on the promissory notes or foreclosure of the mortgages. Instead, the confessions of judgment were just one element of a multi-faceted workout agreement that addressed several items of indebtedness owed to Starion – much more than simply the debt for which judgment

---

[6] Again, Debtors have acknowledged that Starion is oversecured and that issue is not before us.

-10-

was confessed.[7] The confessions of judgment clearly were not intended to extinguish the separate, and continuing, notes and mortgages or other obligations under the workout agreement as those documents remained in effect, payment terms were restructured and additional collateral was provided under the workout agreement – all *in addition* to the confessions of judgment.

Finally, we are not even convinced that it was necessary for the bankruptcy court to engage in an analysis under § 506(b). We note that when the Debtors filed their second amended plan, Starion objected for a variety of reasons, including the failure to provide for the payment of Starion's attorneys' fees as an oversecured creditor. Starion's plan objections were settled by virtue of a document referred to as the "Starion Addendum" to the plan. That addendum specifically states that "Debtors agree to pay Starion's allowable attorney's fees and costs . . ." and that the procedure for doing so is set forth in the plan. The plan clearly allows Starion to recover its fees. It is disingenuous for the Debtors to now argue that Starion is not entitled to seek fees and costs under the plan after agreeing to do so following a plan objection that specifically raised the issue. It is as if the Debtors are playing a game of "gotcha" using semantics after getting Starion to settle its plan objections.

Accordingly, our prior opinion was not clearly erroneous nor does it work a manifest injustice in this case. Therefore, it is law of the case and will not be reopened.

---

[7]It appears that the confessions of judgment were for the Debtors' potential personal liability on certain guaranteed obligations, but the record is less than clear on this point.

-11-

*Timeliness*.

The Debtors' next argument is that the bankruptcy court erred in using the materiality factors set forth in Restatement (Second) of Contracts § 241 when finding that Starion's untimely submission of its attorneys' fee statement was not a material breach of the plan. The Debtors assert that "the correct analysis that should have been undertaken by the Bankruptcy Court was the basic contract interpretation analysis of whether, under the Plan, time was of the essence in requiring Starion to submit the fee by a date certain." If so, Debtors argue that Starion's failure to abide by the deadline is fatal to the fee claim regardless of whether the breach was material.

Debtors' criticism of the bankruptcy court's analysis is astonishing since it is precisely the analysis Debtors argued (in their post-hearing brief to the bankruptcy court) that the court should use. Debtors specifically argued the materiality issue and the Restatement factors to the bankruptcy court – without mention of time being of the essence. We will not now entertain an issue that was not first raised in the bankruptcy court. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Robinson v. Steward (In re Steward)*, 828 F.3d 672, 683-84 (8th Cir. 2016). In any event, Debtors acknowledge that the confirmed plan does not contain a "time is of the essence" clause and we are not persuaded that any of the plan language indicates that time is of the essence regarding the attorney fee claim procedure.

As the bankruptcy court noted, a confirmed Chapter 11 plan "acts like a contract that binds the parties that participate in the plan." *Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms)*, 341 F.3d 738, 744 (8th Cir. 2003) (citation and internal quotation marks omitted). We review the bankruptcy court's interpretation of a contract de novo. *Arvest Bank v. Cook (In re Cook)*, 504 B.R. 496, 502 (B.A.P. 8th Cir. 2014). However, the bankruptcy court is, in the first instance, in the best position to interpret its own orders, including its plan confirmation order.

*Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005) (citing *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1194 (7th Cir.1993)).

The bankruptcy court correctly reviewed the length of the delay and determined that no prejudice had been caused to the Debtors as a result of the delay. The Debtors' only argument regarding timeliness appears to be that the Debtors needed to know how much to pay to the creditor on the effective date of the plan. We agree with the bankruptcy court that the relatively short delay in submitting the requests for attorneys' fees did not prejudice the Debtors (in fact, as a result of the multiple appeals, the Debtors still have not paid the fees) and was not a material breach of the plan that should prohibit Starion's right to collect its fees and costs under the plan.

*Reasonableness.*

The Debtors' final argument is that Starion's fee requests should be disallowed because of its attorneys' "Egregious Practices of Consistently Using Two Attorneys for the Same Tasks and Rampant 'Block Billing.'" In this argument, the Debtors actually agreed with the bankruptcy court's conclusion that Starion's practices of using two attorneys and block billing resulted in unreasonably high, duplicative, and unclear fee itemizations. However, the Debtors believe that such activities should "prohibit Starion from collecting any fees at all." In support, the Debtors cite to a District of Minnesota case stating: "Where a fee application includes both allowable and nonallowable services with no reasonable means of differentiating between the two groups of services, all compensation for such services should be disallowed." *In re Daig Corp.*, 48 B.R. 121, 136 (D. Minn. 1985).

However, a close reading of the *Daig* case reveals that it does *not* stand for the proposition that *all* compensation must be denied for block billing or for utilizing two attorneys. Instead, *Daig* involved a situation where there was no way to determine the

reasonableness of the fees for specific services. Notably, the Debtors do not cite to a single case binding upon this panel and supporting their position. We review the bankruptcy court's decision in determining the reasonableness of attorneys' fees for an abuse of discretion. *Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 994 (8th Cir. 2009). Here, the bankruptcy court clearly examined the time entries, the court docket, and the work performed and appropriately made its adjustments. The bankruptcy court did not abuse its discretion by reducing the fees instead of denying all fees.

## *CONCLUSION*

For the reasons stated, we affirm the decision of the bankruptcy court.

_____